# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black ZTE flip phone, Model Z233VL, IMEI: 990006873566888, Serial #: 329F760218E2

Case No. **18MJ0863**

FILED
FEB 23 2018
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846; | Possession with intent to distribute of controlled substances and conspiracy to do |
| 18 U.S.C. §§ 924(c) | the same; Possession of a firearm in furtherance of a drug crime |

The application is based on these facts:
See Affidavit of ATF Special Agent Belinda Perez, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Belinda Perez, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/23/18

City and state: San Diego, CA

Hon. Jan M. Adler, Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Belinda Perez, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, hereby declare as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a search warrant for each of the following 3 cellular phones (collectively, the "TARGET DEVICES"):

   a. A Black Samsung Galaxy S8 with black case, Model SM-G955U, IMEI: 355979082549318 ("TARGET DEVICE 1");

   b. A Black ZTE flip phone, Model Z233VL, IMEI: 990006873566888, Serial #: 329F760218E2 ("TARGET DEVICE 2"); and

   c. A Grey Samsung phone with blue case, Model SMJ237P, FCC ID: A3LSMJ327P ("TARGET DEVICE 3").

2. The TARGET DEVICES are currently in the possession of the Escondido Police Department, 1163 Centre City Parkway, Escondido, CA 92026.

3. The TARGET DEVICES were seized incident to the arrests of Antonio Nunez on January 11, 2018, and January 29, 2018. A description of the TARGET DEVICES is set forth in Attachment A, which is hereby incorporated herein.

4. Based on the information below, there is probable cause to believe that each of the TARGET DEVICES contains evidence of or is an instrumentality of a crime, specifically violations of 21 U.S.C. §§ 841 and 846 (possession with intent to distribute methamphetamine and conspiracy) and 18 U.S.C. § 924(c)(1) (possession of a firearm in furtherance of a drug trafficking crime). The evidence to be searched for and seized is described in Attachment B, which is hereby incorporated herein.

## EXPERIENCE AND TRAINING

5. I have been a Special Agent with ATF since May 2016, and I am currently assigned to the field office located in Carlsbad, California. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy's Special Agent Basic Training Program. I am also a graduate of Texas State University, where I received a

Master of Science degree in criminal justice, and a graduate of Western Illinois University, where I received a Bachelor of Science degree in law enforcement and justice administration.

6. At the Federal Law Enforcement Training Center and the ATF National Academy in Glynco, Georgia, I received approximately 28 weeks of training. I have also since received numerous hours of post-academy training. My training courses included, but are not limited to, criminal law, constitutional law, and enforcement techniques, such as undercover operations and search warrants. I learned how criminal enterprises are structured and how they operate. I also learned how controlled substances are manufactured, consumed, packaged, marketed, and distributed.

7. During my tenure as a Special Agent, I have received specialized training in the investigation and prosecution of drug-related crimes, and I have participated in investigations involving the possession and distribution of illegal narcotics by criminal street gangs and other drug traffickers. For example, as a Special Agent, my responsibilities have included, but are not limited to, the following:

    a. Functioning as a surveillance agent and observing and recording the movements of gang members, persons trafficking controlled substances, and those suspected of trafficking controlled substances;

    b. Participating in tracing monies and assets gained by controlled substance traffickers from the illegal sale of controlled substances;

    c. Investigating criminal street gangs and violent crimes related to their distribution of controlled substances;

    d. Interviewing witnesses, cooperating individuals, and confidential informants regarding the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances; and

e.  Listening to intercepted telephone conversations between gang members and between drug traffickers where they have described their criminal activities in their own words.

8.  Through the course of my training, experience, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for gang members and illegal drug traffickers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with other gang members, associates, and co-conspirators in order to further their criminal activities. This is particularly true in cases involving hard drugs, such as cocaine, heroin, and methamphetamine. Typically, persons trafficking controlled substances throughout the United States are in telephonic contact with co-conspirators immediately prior to and following their receipt of the drugs, at which time they receive instructions on where and when to deliver the controlled substances. Illegal drug traffickers and their organizations use cellular and digital telephones in part because these individuals believe law enforcement cannot track the originating and destination phone numbers of calls placed to and from cellular and digital telephones. Drug traffickers, including criminal gangs, generate many types of evidence including, but not limited to, cellular phone-related evidence, such as images, video, text, and voice messages documenting their drug trafficking and gang activities and identifying other traffickers, gang members, and associates.

9.  Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in firearms and drug trafficking investigations, I am also aware that:

a.  Drug and firearms traffickers will use digital devices like cellular telephones, tablets, and laptop computers because they are mobile and they have instant access to telephone calls, text, web, email, and voice messages;

b.  Drug and firearms traffickers will use digital devices like cellular

3

telephones, tablets, and laptop computers because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug and firearms traffickers and their accomplices will use digital devices like cellular telephones, tablets, and laptop computers because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug and firearms traffickers will use digital devices like cellular telephones, tablets, and laptop computers to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug and firearms traffickers will use digital devices like cellular telephones, tablets, and laptop computers to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units;

f. The use of digital devices like cellular telephones, tablets, and laptop computers by traffickers tends to generate evidence that is stored on the digital devices, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

g. Individuals involved in the illegal possession and acquisition of firearms and drug trafficking often utilize digital devices like cellular telephones, tablets, and laptop computers with photograph and video capabilities to take and send photographs and videos of other members of criminal organizations, firearms, drugs, criminal proceeds, and assets purchased with criminal proceeds.

10. The facts set forth below are those that I believe are relevant to the limited purpose of this affidavit, namely, to establish probable cause for the requested warrants. The affidavit does not, therefore, include each and every fact that I or other law

4

enforcement personnel may have learned in connection with this ongoing investigation. I have knowledge of the facts set forth below based on my review of the reports and evidence collected in this case. In this affidavit, the dates and times are approximate.

## FACTS SUPPORTING PROBABLE CAUSE

11. Each of the TARGET DEVICES was seized incident to an arrest of Antonio Nunez in January 2018. During the first arrest, TARGET DEVICE 1 and TARGET DEVICE 2 were seized. During the second arrest, TARGET DEVICE 3 was seized. During both incidents, methamphetamine was found on Mr. Nunez's person, and Mr. Nunez appears to have been armed. Mr. Nunez is a documented member of the Diablos gang, which operates in the eastern and north central areas of Escondido. The Diablos gang's primary activities include the possession, use, and sale of controlled substances, vehicle burglary and theft, assault with a deadly weapon, robbery, and murder.

January 11, 2018 Arrest (TARGET DEVICE 1 and TARGET DEVICE 2)

12. On January 11, 2018, an Escondido police officer observed a gray Dodge Dakota driving southbound near Broadway and Lincoln Ave. in Escondido, California. The police officer read the license plate of the vehicle and recalled that it was on the "Hot Sheet" (*i.e.*, a list of recently stolen vehicles). Escondido Police Department ("EPD") communications also confirmed that the vehicle was still an outstanding stolen vehicle. The officer activated his overhead lights and the driver pulled over into an apartment complex. The driver was later identified as Antonio Nunez.

13. As Mr. Nunez stopped the vehicle, the officer observed Mr. Nunez moving around in the vehicle to the point where the vehicle was moving side to side. In addition, the officer heard the sound of metal hitting medal inside the vehicle. Fearing that Mr. Nunez was going for a weapon, the officer yelled at him to roll down his windows and put his hands up. Mr. Nunez complied.

14. Mr. Nunez was taken into custody without incident, and searched incident to his arrest. EPD discovered a white crystalline substance in Mr. Nunez's front pants pocket

5

1  which later tested positive for methamphetamine. In total, Mr. Nunez had approximately
2  2.21 grams of usable methamphetamine.

3      15.     EPD officers conducted a further inspection and inventory of the vehicle Mr. Nunez was in to make sure that there were no other occupants hiding inside. No other persons were discovered; however, officers found a Browning Model 65 short barrel rifle under the driver's seat. The butt end and trigger of the rifle were visible from outside the vehicle and in plain view. The officers made the rifle safe and found one round inside the chamber and two rounds inside the feeding tube. All three rounds were .218 caliber rounds. Subsequent records checks confirmed that the rifle is not registered to Mr. Nunez. Two cellular phones were also found in the vehicle (*i.e.*, TARGET DEVICE 1 and TARGET DEVICE 2). The methamphetamine, short barrel rifle, and phones were seized as evidence.

12     16.     During the inventory of the vehicle, officers also observed that a handle from what appeared to be a metal fork or spoon had been inserted into the ignition. When the officers turned the handle forward in the ignition, they were able to turn it on. No keys to the vehicle were found. Officers later contacted the owner of the vehicle, and the owner confirmed that the vehicle was stolen. The owner did not mention that he was missing any cellular phones or firearms, or that he had left such items in his vehicle.

January 29, 2018 Arrest (TARGET DEVICE 3)

19     17.     On January 29, 2018, while in full uniform and in a marked police car, an EPD Officer noticed Mr. Nunez riding his bicycle on the curb in violation of Escondido Municipal Code 5-4. The officer initiated a traffic enforcement stop using his flashing overhead lights. Mr. Nunez immediately fled on foot, and the officer pursued. During the pursuit, the officer observed Mr. Nunez reaching into his waistband several times, thus giving the officer the impression that he was armed. The officer yelled out "Police, stop!" multiple times, but Mr. Nunez continued to run away. Eventually, Mr. Nunez was apprehended trying to hide in a yard on the 400 block of N. Juniper St. in Escondido, CA. At Mr. Nunez's feet was an empty black nylon holster designed for carrying a large caliber revolver. Mr. Nunez was also wearing only one black Nike shoe. During a search of the

surrounding area, officers recovered a loaded .356 Smith and Wesson revolver on the ground that was loaded with six live rounds. Nearby, officers also recovered a black Nike shoe that appeared to belong to Mr. Nunez.

18. During a search incident to Mr. Nunez's arrest, officers found approximately 2.57 grams of usable methamphetamine in Mr. Nunez's front pocket. Officers also found a cell phone on Mr. Nunez's person (*i.e.*, TARGET DEVICE 3).

19. As part of their investigation, officers later contacted the elderly couple living at the residence where Mr. Nunez was apprehended, and the couple indicated that they did not own any firearms and were not aware of any reasons why there should be a gun on the ground on their property in plain view.

20. Given the above facts, including Mr. Nunez's membership in the Diablos gang and the short timeframe between these two incidents in which Mr. Nunez was able to obtain usable methamphetamine and firearms, it appears likely that he is trafficking in drugs and/or guns. Further, based upon my training, experience, and consultations with other law enforcement personnel, individuals involved in firearms and drug trafficking often utilize cellular phones to facilitate their illicit transactions, such as by negotiating those transactions by text message or taking and sending photographs of illegal narcotics and firearms to be sold. In light of the above, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the drug and firearm trafficking activities of Nunez and his co-conspirators is stored in the memory of the TARGET DEVICES, *e.g.*, telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and

can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I or another qualified law enforcement officer will collect the TARGET DEVICES and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**GENUINE RISKS OF DESTRUCTION**

24. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be

permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

### PRIOR ATTEMPTS TO OBTAIN INFORMATION

25. The United States has not attempted to obtain this information by other means.

### CONCLUSION

26. Based on my training and experience, and the foregoing facts, I believe there is probable cause that the TARGET DEVICES described in Attachment A are fruits, instrumentalities, and evidence of violations of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 924(c)(1). In addition, because these phones were seized, there is probable cause to believe that evidence of the illegal activity committed by Nunez and others continues to exist on the TARGET DEVICES. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A and seize the items listed in Attachment B.

_____
Belinda Perez, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me this 23rd day of February, 2018.

_____
HONORABLE JAN M. ADLER
United States Magistrate Judge

9

## ATTACHMENT A

### ITEMS TO BE SEARCHED

The following items are to be searched (collectively, the "TARGET DEVICES"):

a. A Black Samsung Galaxy S8 with black case, Model SM-G955U, IMEI: 355979082549318 ("TARGET DEVICE 1");

b. A Black ZTE flip phone, Model Z233VL, IMEI: 990006873566888, Serial #: 329F760218E2 ("TARGET DEVICE 2"); and

c. A Grey Samsung phone with blue case, Model SMJ237P, FCC ID: A3LSMJ327P ("TARGET DEVICE 3").

The TARGET DEVICES are currently in the possession of the Escondido Police Department, 1163 Centre City Parkway, Escondido, CA 92026.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data concerning violations of 21 U.S.C. §§ 841 and 846 (Conspiracy and Possession with Intent to Distribute Methamphetamine) and 18 U.S.C. § 924(c)(1) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime), and is described as follows:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to acquire or possess firearms or ammunition, or smuggle or otherwise import or deliver controlled substances from Mexico to the United States or within the United States;

    b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to acquire or possess firearms or ammunition, or smuggle or otherwise import or deliver controlled substances from Mexico to the United States or within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in efforts to acquire or possess firearms or ammunition, or smuggle or otherwise import or deliver controlled substances from Mexico to the United States or within the United States;

    d. tending to identify travel to or presence at locations involved in efforts to acquire or possess firearms or ammunition, or smuggle or otherwise import or deliver controlled substances from Mexico to the United States or within the United States;

    e. tending to identify the user of, or persons with control over or access to,

      the TARGET DEVICES; or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.